**Arnold H. BRUNER, Appellant,**

v.

**GULF OIL CORPORATION et al., Appellees.**

**No. 13979.**

Court of Civil Appeals of Texas.

San Antonio.

July 5, 1962.

Rehearing Denied Aug. 1, 1962.

Lyne, Blanchette, Smith & Shelton, Dallas, for appellant.

Kleberg, Mobley, Lockett & Weil, J. Pat McGloin, Corpus Christi, Sam Pickard, W. B. Edwards, Robert L. Dabney, Fred A. Lange, Houston, for appellees.

POPE, Justice.

The question presented is whether an oil and gas lease, under the terms of its habendum clause, lapsed as to oil, upon the cessation of oil production although gas is produced on lands outside the boundaries of the original lease, but within an area later unitized for gas production only. The trial court held that the lease did not lapse. We affirm the judgment.

Emil Boehm and wife executed an oil and gas lease on June 1, 1935, covering the lands here in suit. We shall call that "Lease I". Defendants, Gulf Oil Corporation, Lion Oil, Inc., and Monsanto Chemical Company, claim under that lease. Their rights are dependent upon the continuation of that lease, which was for a term of one year "and as long thereafter as oil, gas or

other mineral is produced from said land." The lease did not contain any provision with regard to pooling or unitization. Oil was discovered and there was production from the lands until June 16, 1951, when it stopped. This is the event which plaintiff, Arnold Bruner, relies upon as the cessation of the lease and the termination of all rights under it.

Emil Boehm's heirs, together with all other parties who owned the royalty, mineral and leasehold estate on September 15, 1949, entered into a gas pooling agreement. That agreement included the lands covered by Lease I and additional lands. The pooling agreement provided:

> "Drilling or reworking operations on, or production of gas from, any portion of the land in the Unit Area shall have the effect of continuing the oil and gas leases described herein, situated in the Unit Area in force and effect whether or not such operations be on, or production be from, the lands described in the separate leases. * * *"

Gas was produced from the unit, but not on lands included in the Boehm Lease I. This production began before the oil production on lands included in Lease I ceased. The gas production has continued. The trial court held that this gas production maintained Lease I in force for all purposes.

Emil Boehm's heirs executed what we shall call Lease II, on March 2, 1955, to the oil only, on lands originally covered by Lease I. Arnold Bruner claims under Lease II. He drilled and obtained a producing oil well. He argues that the trial court's judgment is in error because the pooling agreement applies only to gas, that the pooling agreement severed the gas estate from the oil estate, and that the unit production of gas maintained Lease I in force as to gas only and not as to oil.

The pooling agreement is clear. By it the parties agreed that production from any portion of the unit area would have the ef-fect of continuing "the oil and gas leases described herein" in force and effect. In our opinion, this case is controlled by Southland Royalty Co. v. Humble Oil & Refining Co., 151 Tex. 324, 249 S.W.2d 914. While the pooling was by operation of law instead of by contract, Whitaker v. Texaco, Inc., 10 Cir., 283 F.2d 169, reaches a similar result. Accord, Scott v. Pure Oil Co., 5 Cir., 194 F.2d 393; Hoffman, Voluntary Pooling and Unitization, pp. 118–121.

The judgment is affirmed.