**HUMBLE OIL & REFINING COMPANY,**
Appellant,

v.

**H. L. KUNKEL et al., Appellees.**

No. 14063.

Court of Civil Appeals of Texas.

San Antonio.

March 6, 1963.

Rehearing Denied April 3, 1963.

Charles L. Price, Houston, for appellant.

Matthews, Nowlin, Macfarlane & Barrett, P. H. Swearingen, Jr., San Antonio, Fred V. Klingeman, Karnes City, for appellee.

POPE, Justice.

Was the lease continued in force by production outside the lease but within a pooled unit, when the unit was declared after the expiration of the primary term but within sixty days from the abandonment of a dry hole? The trial court, in a summary judgment, held that the lease had terminated. We affirm the judgment.

H. L. Kunkel and others, lessors, sued Humble Oil & Refining Company to determine whether the Kunkel lease on 145 acres of Karnes County land had terminated. The lease was executed on August 7, 1956, and had a primary term of five years. There were no drilling operations on the lease until July 19, 1961, when Humble commenced drilling a gas well. Drilling continued, as the lease permitted, beyond the primary term's expiration date, and was plugged and abandoned as a dry hole on September 6, 1961. There was no further drilling and no claims by force of additional drilling are now made. By the terms of the lease, however, Humble still had an additional sixty days to do something to save the lease. That sixty-day period would expire on November 5, 1961. On November 1, 1961, Humble did the thing which it claims was sufficient to keep the lease in force. It executed and filed for record an oil unit designation instrument which described 160 acres of land, including 8.94 acres of the Kunkel lease. The unit had a producing oil well which was located off the Kunkel tract. Humble's contention is that production on the unit was production on the Kunkel tract, that production was obtained while the Kunkel lease was still in force, and that production keeps the Kunkel lease in force. Lessors contend that the Kunkel lease permitted pooling, but that pooling after the expiration of the primary term was too late, and that the lease permitted only drilling or reworking operations at that time to keep the lease alive. The answer to the problem is found within the lease itself. The pertinent provisions of the lease are:

"2. Subject to the other provisions herein contained, this lease shall be for a term of five years from this date (called 'primary term') and as long thereafter as oil, gas or other mineral is produced from said land or land with which said land is pooled hereunder. * * *

"4. (a) [1] Lessee, at its option is hereby given the right and power to pool or combine the acreage covered by this lease, or any portion thereof as to oil and gas, or either of them, with other land, lease or leases, in the immediate vicinity thereof to the extent hereinafter stipulated, when in Lessee's judgment it is necessary or advisable to do so in order properly to explore, or to develop and operate said leased premises in compliance with the spacing rules of the Railroad Commission of Texas or other lawful authority, or when to do so would in the judgment of Lessee, promote the conservation of oil and gas in and under and that may be produced from said premises. (b) Units pooled for oil hereunder shall not substantially exceed 40 acres each in area * * * provided that should governmental authority having jurisdiction prescribe or permit the creation of units larger than those specified, units thereafter created may conform substantially in size with those prescribed by governmental regulations. * * * (c) Lessee shall file for record in the appropriate records of the county in which the leased premises are situated an instrument describing and designating the pooled acreage as a pooled unit. (d) Lessee may at its election exercise its pooling option after commencing operations for or completing an oil or gas well on the leased premises, and the pooled unit may include, but it is not required to include, land or leases upon which a well capable of producing oil or gas in paying quantities has theretofore been completed or upon which operations for the drilling of a well for oil or gas has theretofore been commenced. (e) Operations for drilling on or production of oil or gas from any part of the pooled unit which includes all or a portion of the land covered by this lease regardless of whether such operations for drilling were commenced or such production was secured before or after the execution of this instrument or the instrument designating the pooled units, shall be considered as operations for drilling on or production of oil or gas from land covered by this lease whether or not the well or wells be located on the premises covered by this lease, and the entire acreage constituting such unit or units, as to oil, and gas, or either of them, as herein provided, shall be treated for all purposes, except the payment of royalties on production from the pooled unit, as if the same were included in this lease. * * *

"6. (a) If prior to discovery and production of oil, gas or other mineral on said land or on acreage pooled therewith Lessee should drill a dry hole or holes thereon, or if after discovery and production of oil, gas or other mineral, the production thereof should cease from any cause, this lease shall not terminate if Lessee commences operations for drilling or reworking within sixty (60) days thereafter or if it be within the primary term, commences or resumes the payment or tender of rentals or commences operations for drilling or reworking on or before the rental paying date next ensuing after the expiration of sixty days fom date of completion of dry hole or cessation of production. (b) If at any time subsequent to sixty (60) days prior to the beginning of the last year of the primary term and prior to the discovery of oil, gas or other mineral on said land, or on acreage pooled therewith, Lessee should drill a dry hole thereon, no rental payment or operations are necessary in order to keep the lease in force during the remainder of the primary term. (c) If at the expiration of the primary term, oil, gas or other mineral is not being produced on said land, or on acreage pooled therewith, but Lessee

---

1. The sentences have been designated alphabetically for easier identification.

is then engaged in drilling or reworking operations thereon or shall have completed a dry hole thereon within sixty (60) days prior to the end of the primary term, the lease shall remain in force so long as operations on said well or for drilling or reworking of any additional well are prosecuted with no cessation of more than sixty (60) consecutive days, and if they result in the production of oil, gas or other mineral, so long thereafter as oil, gas or other mineral is produced from said land or acreage pooled therewith."

From these provisions and the facts, certain matters are not disputed. Humble had powers to pool the Kunkel lease with other lands. Operations for drilling on or production from any part of the pooled unit would be treated "for all purposes" as if they were included in the Kunkel lease. Paragraph 4, sentence (e) of the lease so provides. When Humble filed its unit designation on November 1, 1961, Humble still had the power to continue the lease in force, since sixty days from the abandonment of the dry hole did not expire until November 5, 1961. We come, then to the critical question. That question is not whether Humble declared its unit while the lease was still in force; it is, instead, did Humble do that thing permitted by the lease to save it?

The thing and the only thing which Humble relies upon to keep the lease alive is that it furnished production. The Kunkel lease permits "production" to keep the lease alive, but it does not permit the creation of a unit, and hence "production" after the expiration of the primary term. Paragraph 6, sentence (c), gives us the answer. It is there that the parties stated what could be done at that stage and time to keep the lease alive. It ties the events down to a fixed time, in these words: "If, at the expiration of the primary term, oil, gas or other mineral is not being produced on said land * * *." No one claims that there was production on the Kunkel lease on

August 7, 1961. No unit had then been declared through which Humble could claim the advantages of unit production under paragraph 4, sentence (e) of the lease. Paragraph 6, sentence (c) tells the parties the things they could still do at that critical time, and production from a unit formed after the primary date is not mentioned. The parties in making the lease addressed themselves to the problem of this precise time and agreed that the only thing Humble could do at that time to save the lease was to drill or rework. After mentioning drilling or reworking operations, the agreement says, "and if they result in the production of oil, gas, or other mineral," the lease will remain in force. It was too late to pool, and Humble did nothing else.

While we have examined the several cases relied upon by the parties, they are not controlling for they too are decided upon the bases of their special lease provisions. Skelly v. Harris, Tex., 352 S.W.2d 950, was a case of pooling before the expiration of the primary term. The same is true of Bruner v. Gulf Oil Corporation, Tex.Civ.App., 359 S.W.2d 210. Gulf Oil Corp. v. Reid, 161 Tex. 51, 337 S.W.2d 267, did not concern the effect of a pooling with productive acreage after the primary term. The same may be said of Stanolind Oil & Gas Co. v. Newman Bros. Drilling Co., 157 Tex. 489, 305 S.W.2d 169, and Rogers v. Osborn, 152 Tex. 540, 261 S.W.2d 311. Humble relies chiefly upon Harper v. Hudson Gas & Oil Corp., 5 Cir., 299 F.2d 238. The facts are similar because a unit was formed after the expiration of the primary term. The leases, however, were entirely different, because in Harper v. Hudson the lessee was authorized to form a unit "[A]t any time while this lease is in force and effect." The Kunkel lease, to keep the lease alive by reason of production, required production, whether from a well on that lease or production from a unit, "at the expiration of the primary term."

The judgment is affirmed.