730 P.2d 458

Jim J. OWENS, Don M. Fedric, and Ronald Peters, Plaintiffs-Appellants,

v.

The SUPERIOR OIL COMPANY, Defendant-Appellee.

No. 16517.

Supreme Court of New Mexico.

Dec. 12, 1986.

A.J. Losee, Losee & Carson, Artesia, K. Douglas Perrin, Shamas & Perrin, Roswell, for plaintiffs-appellants.

Harold L. Hensley, Jr., Hinkle, Cox, Eaton, Coffield & Hensley, Roswell, for defendant-appellee.

## OPINION

WALTERS, Justice.

Plaintiff Owens and others sued Superior to obtain release of an oil and gas lease held by Superior. Both parties moved for summary judgment; the trial judge denied Owens's motion and granted Superior's. Owens appeals, posing the following issue:

> Does pooling leased land with other land, on which lessee began drilling operations within the sixty-day grace period allowed under a continuous operations clause, effectuate a valid extension of an oil and gas lease so long as production is maintained?

To answer this question, we review the facts. On April 8, 1974, Donna G. Roberts, Owens's predecessor in interest, executed a ten-year primary term oil and gas lease in favor of Superior. Before the primary term expired, Superior began drilling operations at its No. 2 Mescalero Ridge Well located on the leased lands. That drilling resulted in a dry hole and, on April 25,

1984, Superior ceased operations at the No. 2 well. Since the primary term had expired, and the continuous operations clause of the lease provided for termination sixty days after the cessation of operations unless the lessee commenced "additional drilling or reworking operations," Superior began drilling operations at its No. 11 Mescalero Ridge Well on April 28, 1984. No. 11 was not located on the leased land. On May 9, 1984, Superior filed its "Designation of Mescalero Ridge Com. No. 11 Unit" purporting to pool forty acres of the leased land with forty acres on which the No. 11 well was located, to form an eighty-acre unit. First production from No. 11 well was obtained on June 26, 1984.

On June 7, 1984, Owens acquired a one-half mineral interest in the land covered by the lease. On July 11, 1984, Fedric and Peters (co-plaintiffs) acquired certain undivided interests in the minerals and leasehold estate of Owens, two days after Owens had made a demand for release. Superior refused to execute the release and, on August 1, 1984, plaintiffs filed this suit.

New Mexico has not previously decided the issue presented. Two other jurisdictions reached opposite results in similar cases. *Compare Humble Oil & Refining Co. v. Kunkel,* 366 S.W.2d 236 (Tex.Civ. App.1963) *with Harper v. Hudson Gas & Oil Corp.,* 189 F.Supp. 781 (W.D.La.1960), *aff'd,* 299 F.2d 238 (5th Cir.1962). In both, drilling operations in progress following expiration of the primary term resulted in dry holes. Both leases provided that the lessees had sixty days after completion of the dry hole to commence additional operations. In *Harper,* within the sixty days, the Louisiana Commissioner of Conservation issued an order pooling the leased lands with other lands on which there was a preexisting well. The *Harper* court granted summary judgment in favor of lessee Hudson Oil. In *Kunkel,* within the sixty days, Humble Oil pooled its leased lands with other land on which there was a preexisting well. The trial judge granted a summary judgment in favor of termination, and the appellate court affirmed.

As with other leases, the primary consideration when construing an oil and gas lease is to give effect to the intention of the parties. *Acquisto v. Joe R. Hahn Enterprises, Inc.,* 95 N.M. 193, 619 P.2d 1237 (1980). Neither party argues that the provisions in question are ambiguous; therefore, the lease must be given the legal effect resulting from a construction of the language contained within the four corners of the instrument. *L.R. Property Management, Inc. v. Grebe,* 96 N.M. 22, 627 P.2d 864 (1981); *see also Newman Brothers Drilling Co. v. Stanolind Oil & Gas Co.,* 296 S.W.2d 567 (Tex.Civ.App.1956), *rev'd on other grounds,* 157 Tex. 489, 305 S.W.2d 169 (1957).

Superior began drilling operations during the primary term which resulted in a dry hole. The continuous operations clause provides, in part:

6. a) If * * * lessee should drill and abandon a dry hole or holes thereon * * this *lease* shall not terminate if lessee commences additional drilling or reworking operations within sixty (60) days thereafter * * * (emphasis added).

Owens argues that only this clause remained in force after the primary term expired and Superior, therefore, could only extend the lease by engaging in additional drilling, mining, or reworking on the lands leased from Owens. Since Superior did not comply with this requirement, plaintiff argues, the lease expired by its own terms.

Superior urges us to adopt the federal district court's interpretation of the similar provision in *Harper.* The *Harper* court, noting that the primary purpose of a continuous operations clause "is to give a lessee who has incurred the expense of drilling a well an opportunity to save his lease in the event the well is a dry hole," held that the clause kept the entire lease, including the pooling clause, in full force and effect for a sixty-day period after the cessation of operations. *Harper v. Hudson Gas & Oil Corp.,* 189 F.Supp. at 787 (quoting *Stanolind Oil and Gas Co. v. Newman Brothers Drilling Co.,* 157 Tex. 489, 497, 305 S.W.2d 169, 174 (1957)). We

are persuaded by this reasoning, and hold that a continuous operations clause in an oil and gas lease keeps the entire lease in full force and effect if, within a period of sixty days after the cessation of drilling or production, drilling or reworking occurs on the leased land or any land with which it is pooled when pooling is permitted by the lease.

■ To hold otherwise necessitates construing the continuous operations clause as terminating all other provisions of the lease as soon as operations or production cease. To do so is contrary to the express language of that clause. Accordingly, since Superior began drilling operations during the primary term of the lease, and even though they resulted in a dry hole after the term ended, the continuous operations clause maintained the lease in full force and effect for sixty days after April 25, 1984.

■ Oil and gas leases must be construed to give effect to all of their provisions so far as possible. *Cf. Gallup Gamerco Coal Co. v. Irwin*, 85 N.M. 673, 515 P.2d 1277 (1973) (meaning and significance must be given to each part of a real estate lease in context of entire agreement); *Waxler v. Humble Oil & Refining Co.*, 82 N.M. 8, 474 P.2d 494 (1970) (same). Here, the pooling provision gave Superior the "right to pool or unitize this lease." By exercising that right within sixty days of drilling the dry hole on the leased premises, Superior saved the lease for as long as production is maintained. *Harper v. Hudson Gas & Oil Corp.*

Owens insists that, unlike the *Harper* court, we must strictly construe the lease against the lessee. There is New Mexico authority to support his position. *See Greer v. Salmon*, 82 N.M. 245, 479 P.2d 294 (1970) (recognizes cautious application of rule that oil and gas leases are to be construed most strongly against lessees). In *Kunkel,* the court's critical inquiry was not "whether Humble declared its unit while the lease was still in force; it is, instead, did Humble do that thing permitted by the lease to save it?" *Humble Oil & Refining Co. v. Kunkel*, 366 S.W.2d at 239. The court there focused solely on the language of the continuous operations provision, and held that the mere pooling of the leased land with land on which there was an already producing well did not satisfy the specific requirements of the continuous operations clause. It held the lease terminated. Here, however, not even a strict construction of the provision in question defeats Superior's claims.

Both parties urge that success under the *Kunkel* analysis depends on interpretation of the final section of the continuous operations clause which provides:

If, at the expiration of the primary term, oil, liquid hydrocarbons, gas or their respective constituent products, or any of them, is not being produced on said land *or land pooled therewith* but lessee is then engaged in operations for drilling, mining, or reworking of any well or wells thereon, this lease shall remain in force so long as such operations or said additional operations are commenced and prosecuted * * * with no cessation of more than sixty (60) consecutive days, and, if they result in production, so long thereafter as oil, liquid hydrocarbons, gas or their respective constituent products, or any of them, is produced from said land *or land pooled therewith* (emphasis added).

Owens insists that the crucial language is "said land or land pooled therewith," and argues that the second appearance of the phrase "or land pooled therewith" relates back to the first time it appears in the section, thereby requiring that any land covered by this provision be pooled before the expiration of the primary term.

We construe the paragraph to the contrary, believing that the clause ending with the first "or land pooled therewith" simply introduces the particular situation that must exist to cause this section to become operative. The rest of the paragraph then instructs the lessee what may be done to save the lease. The final "or land pooled therewith," read in conjunction with the phrase "such operations or said additional

operations ... commenced and prosecuted," establishes that one option for the lessee is to begin additional operations resulting in production on "said land or land pooled therewith" during that subsequent sixty-day period. Therefore, even though under *Kunkel,* pooling alone is insufficient to save a lease under the continuous operations clause after the expiration of the primary term, "additional operations ... commenced and prosecuted" on either the leased land or land with which it has been pooled during the sixty-day grace period covered by the clause, continues the lease in force. Superior, unlike Humble Oil, did "that thing" which saved the lease—it engaged in further drilling (that resulted in production) on land that had been "pooled therewith [the leased land]" prior to production, and before the sixty days had run.

Summary judgment in favor of Superior is AFFIRMED.

SOSA, Senior Justice, and RIORDAN, J., concur.