404 P.2d 292

**J. M. LEONARD and wife, Mary Leonard, Neville G. Penrose and wife, Doris, Penrose, Plaintiffs-Appellants,**

**v.**

**J. C. BARNES et al., Defendants-Appellees, Johnson-Walker Oil Company, Intervening Defendant-Appellee,**

**Indiana Oil Purchasing Company, Defendant-Appellee and Counter Claimant and Cross-Claimant in Interpleader.**

**No. 7488.**

Supreme Court of New Mexico.

July 19, 1965.

Clarence E. Hinkle, Paul W. Eaton, Jr., Roswell, for appellants.

Atwood & Malone, Roswell, for appellees.

CHAVEZ, Justice.

Appellants, plaintiffs in the lower court, appeal from a judgment dismissing appellants' complaint and adjudging appellees to be the owners of the $\frac{1}{4}$ of $\frac{1}{8}$ royalty interest in question.

The stipulated statement of facts is as follows:

"1. That on June 13, 1946 an oil, gas and mineral lease was made and entered into by and between J. V. Terrill, a bachelor, S. J. Iverson and wife, Marjorie Iverson, Neville G. Penrose and wife, Doris Penrose as 'Lessor' and Forrest Oil Corporation as 'Lessee' which described the lands covered thereby in Lea County, New Mexico, as follows:

Undivided $\frac{1}{4}$ interest in N/2SE/4, SE/4SE/4, E/2SW/4SE/4 of Section 14; N/2NE/4 and SW/4NE/4

of Section 23, owned by J. V. Terrill, lessor herein;

Undivided ¼ interest in N/2SE/4, SE/4SE/4, E/2SW/4SE/4 of Section 14; N/2NE/4, SW/4NE/4 of Section 23, owned by S. J. Iverson and wife, Marjorie Iverson, lessors herein;

Undivided ½ interest in SE/4SW/4, W/2SW/4SE/4 of Section 14; SE/4 and SE/4NE/4 of Section 23, owned by Neville G. Penrose and wife, Doris Penrose, lessors herein; All in T–15–S, R–37–E, N.M.P.M.

That said lease, covering the 520 acres above described, was for a primary term 'of ten years from date 'and as long thereafter as oil, gas or other mineral is produced from said land * *.' and provided for the payment to the Lessor of an annual rental for the privilege of deferring the commencement of drilling operations from year to year.

"That the oil and gas lease above referred to was entered into by and between said parties as a result of negotiations between the defendant, J. V. Terrill, and the Forrest Oil Corporation for an agreed bonus consideration of $25.00 per acre. The details of the transaction were handled by Mr. Lediber, a landman of the Forrest Oil Corporation and the lease form used in consummating the transaction was selected by Mr. Lediber and the preparation of the lease was by him. The lease form was delivered by the Forrest Oil Corporation to the defendant, J. V. Terrill and mailed by him to the plaintiff, Neville G. Penrose, with the request that he obtain the signatures of S. J. Iverson and wife, Marjorie Iverson. The lease was executed and acknowledged by Iverson and wife on July 1, 1946; by Penrose and wife on July 10, 1946; and by J. V. Terrill on July 12, 1946 and the lease bonuses were paid by Forrest Oil Corporation directly to the respective lessors in proportion to their acreage interests. None of the parties who were named as lessors in the lease had anything to do with the preparation of the same and there was no discussion between any of the parties who were lessors and the lessee, or by or between or among the parties who were lessors as to whether or not it was intended by the execution of the single lease prepared by the Forrest Oil Corporation to pool or provide for the apportionment of the royalty which might accrue under the lease. That the delay rentals provided for under the terms of said lease were paid in conformity therewith for the years 1947 through 1950 and each of the lessors received their proportionate part of the total

rentals paid for each year based on the number of acres owned by each.

"2. That at the time of the execution of said oil and gas lease on June 13, 1946, the defendant J. V. Terrill, a bachelor, was the owner in fee simple of an undivided one-fourth interest and S. J. Iverson and wife Marjorie Iverson were the owners of an undivided one-fourth interest in and to all of the oil, gas and other minerals in and under and which might be produced from the following described lands situated in Lea County, New Mexico, hereinafter referred to as Tract Number 1:

Tract No. 1:

Township 15 South, Range 37 East, N.M.P.M.:

Section 14: N/2SE/4, SE/4 SE/4, E/2SW/4SE/4

Section 23: N/2NE/4, SW/4 NE/4

containing 260 acres, more or less.

"3. That as of the time of the execution of said oil and gas lease on June 13, 1946, the plaintiffs Neville G. Penrose and wife Doris Penrose were the owners in fee simple of an undivided one-half interest in and to all of the oil, gas and other minerals in and under and which might be produced from the following described lands situated in Lea County, New Mexico,

hereinafter referred to as Tract Number 2:

Tract No. 2:

Township 15 South, Range 37 East, N.M.P.M.:

Section 14: SE/4SW/4, W/2 SW/4SE/4

Section 23: SE/4, SE/4NE/4

containing 260 acres, more or less.

"4. That during the primary term of said oil and gas lease and while the same was in good standing, the lessee and its assigns caused Well 1–B to be commenced on or about March 5, 1951 and completed on or about July 14, 1951 as a well capable of producing oil and gas from the Devonian Formation.

"That the lessee and its assigns also caused Well 2–B to be commenced on or about September 19, 1952 and completed on or about November 14, 1952 as a well capable of producing from the Wolfcamp Formation.

"That both of said wells were drilled upon the NW/4SE/4 of Section 14, Township 15 South, Range 37 East, N.M.P.M. and being a part of the lands described in Tract No. 1 above referred to.

"That oil and gas has at all times continued to be produced from said wells and is still being produced there-

from and that no other wells have been drilled upon the lands covered by said lease. That oil and gas has not at any time been produced from the lands described as Tract No. 2.

"5. That the defendant, Indiana Oil Purchasing Company has been running and purchasing the oil from the producing wells located upon said leasehold premises since January 1, 1953 and on account of the failure and refusal of the parties who were named as lessors in said lease and their successors in interest to agree upon a division order for the payment of ¼ of ⅛ of the royalty which is claimed by plaintiffs to be due and owing them on account of the production from said leasehold premises, the Indiana Oil Purchasing Company impounded and held in suspense all of the proceeds accruing on account of the sale of oil and gas since January 1, 1953 which are payable on account of said ¼ of ⅛

royalty interest claimed by the plaintiffs and the Indiana Oil Purchasing Company has paid into the registry of this Court the sum of $53,611.37 being the proceeds from ¼ of ⅛ of the production from the wells on said leasehold premises, from January 1, 1953 to March 31, 1963 inclusive. The said Indiana Oil Purchasing Company has further agreed to tender into Court an amount equal to ¼ of the ⅛ of the proceeds accruing for each subsequent month, all of which are to be held subject to a determination of the interest of the parties to this cause therein.

"6. That at the time of the filing of this action and the lis pendens in connection therewith and at all times since January 1, 1953, the undivided one-half interest in the minerals covered by said oil and gas lease insofar as the same covers and affects Tract No. 2 above described was owned and held by the plaintiffs as follows:

An undivided ⅛ interest----------------------------Neville G. Penrose
An undivided ⅜ interest----------------------------J. M. Leonard

---

"7. That at the time of the filing of this action and the lis pendens in connection therewith and at all times since January 1, 1953, except as hereinafter set forth, the undivided one-half interest in the minerals insofar as said lease covers and affects Tract No. 1 hereinabove described was owned and held of record by the defendants in undivided interests as follows:

3/26 ----------------------C. E. Marsh, II, Trustee
2/26 ----------------------Wayne Moore
1/26 ----------------------J. C. Barnes
1/78 ----------------------Jane Barnes Ramsland ⎫
1/78 ----------------------Shirley B. Winn ⎬ 1/26
1/78 ----------------------J. C. Barnes, Jr. ⎭
2/26 ----------------------Charles R. Turner
1/195 --------------------Sunac Petroleum Corporation, formerly Stekoll
                                Petroleum Corporation
23/195 --------------------Brook Oil Corporation
1/390 --------------------Eldredge E. Combs
1/390 --------------------Ted L. Bear
1/390 --------------------B. Morton de Lespinasse and Gretchen Sumpf
1/390 --------------------de Lespinasse
                                Louise S. Sumpf
1/390 --------------------William F. Maloney
1/390 --------------------Hillard R. Giffen
1/390 --------------------Martha Helm Craig
1/390 --------------------Mary Helen Mason
1/390 --------------------William Helm, Trustee
1/390 --------------------Robert Sumpf
TOTAL: 1/2 INTEREST

"The undivided 3/26 interest shown hereinabove to be vested in C. E. Marsh II, Trustee, was conveyed by J. V. Terrill to the said C. E. Marsh on February 8, 1957 effective as of 7:00 o'clock A.M. January 1, 1957 and the defendant J. V. Terrill was the record title owner of said interest at all times from January 1, 1953 to said effective date and C. E. Marsh II, Trustee, has been the record title owner of said interest since that time.

"The undivided 1/195 interest shown hereinabove to be vested in the Sunac Petroleum Corporation, formerly Stekoll Petroleum Corporation, was acquired by deed from Beaver Lodge Oil Corporation, formerly Beaver Lodge Corporation, dated May 15, 1959, and was effective as of May 1, 1959. The Beaver Lodge Oil Corporation was the record title owner of said interest from January 1, 1953 to May 1, 1959 and the Sunac Petroleum Corporation, formerly Stekoll Petroleum Corporation, has been the record title owner of said interest from May 1, 1959 to the time of the filing of this action and the lis pendens in connection therewith.

"The undivided 23/195 interest shown hereinabove to be vested in Brook Oil Corporation was acquired from the United Tanker Corporation by deed dated June 10, 1953, effective April 30, 1953. The Brook Oil Corporation, subsequent to the time of the filing of this action and the lis pendens in connection therewith, conveyed said interest on December 28, 1961 to the Johnson-Walker Oil Company, effective October 1, 1961, and assigned all of its claim to any royalty which may have accrued on account of said interest, to said Johnson-Walker Oil Company, for the period April 30, 1953 to October 1, 1961.

"The undivided 1/390 interest shown hereinabove to be vested in William Helm, Trustee, has been conveyed to Frank M. Helm, Jr., Trustee, subsequent to the filing of this action and the lis pendens in connection therewith.

"8. That subsequent to the execution of the lease hereinabove referred to, the plaintiff Neville G. Penrose and the defendant J. V. Terrill and S. J. Iverson and wife, each conveyed interests in the minerals owned by them, subject to the existing lease.

"IT IS FURTHER STIPULATED AND AGREED that the parties hereto may introduce in evidence as a part of the record in this case a copy of the oil and gas lease attached to plaintiffs' Complaint as Exhibit 'A' and being the lease referred to in the foregoing statement of facts, as well as abstracts of title or any portions thereof or copies of deeds shown by said abstracts showing the chain of title to any of the lands covered by said lease, as shown of record in the office of the County Clerk of Lea County."

The trial court made the following findings of fact:

"The Court adopts the Stipulation as its Finding of Fact No. 1; and upon the testimony the Court finds the following additional facts:

"2. Defendant J. V. Terrill, who negotiated the sale of the lease to Forrest Oil Corporation, and who was one of the Lessors therein, did not know that execution of a lease embracing the two tracts of land would result in a pooling of royalties under the lease, and did not intend to pool the royalties on production from lands in which he owned a mineral interest with other production that might be obtained from lands embraced in said lease.

"3. The manner in which the premises were described in the lease to Forrest Oil Corporation and the identification therein of the several interests owned by the individual lessors evidenced an intent on the part of the parties to keep separate the interests of

the parties and not to pool royalties which might accrue on production from the two tracts of land embraced in the lease.

"4. There was nothing in the circumstances surrounding the execution of the lease to Forrest Oil Corporation which indicates or establishes any intent on the part of the lessors in said lease to pool the royalties which might become payable under it.

"5. All of the lessors in the Forrest Oil Corporation lease subsequently executed conveyances of mineral interests subject to the lease. In each such conveyance the lessor executing the mineral conveyance described only the land in which he owned a record mineral interest and made no reference to other lands described in the lease or to any right to participate in royalty from such lands. In so doing, the parties evidenced their construction of the oil and gas lease as not having effected a pooling of royalties which might accrue under it.

"6. The oil and gas lease to Forrest Oil Corporation contains no provision affirmatively providing for the pooling of royalties from the tracts in several ownership which were described therein." .

This is a case of first impression in New Mexico. The question presented is wheth-er the execution of a joint lease for oil and gas by several owners of contiguous tracts of land, separately owned, should be construed as one providing for pooling the royalties under the entire acreage in the lease, absent an express agreement in the lease to that effect.

Under their first point, appellants contend that the trial court erred in "giving effect to the testimony of J. V. Terrill in the face of the stipulated facts which the court adopted * * *." The questions and answers to which appellants refer are:

"Q. Did you at that time have any intention of pooling the royalties under your lease?

"MR. HINKLE: If the Court please, we object to testimony on his intention."

The objection was sustained; however, after a colloquy between the trial court and counsel for appellees, the court ruled:

"THE COURT: You can ask him whether he intended to pool his royalty or not."

Whereupon the following question and answer were given:

"Q. Did you intend to pool your royalty Mr. Terrill?

"A. I had no thought of it, no, sir.

"MR. MALONE: You may take the witness.

**340**

"THE COURT: Cross-examine?

"MR. HINKLE: No questions."

No objection was made to the trial court's ruling as to what the witness Terrill could be asked; however, even if we consider appellants' objection, this point cannot be sustained.

■ The objection made by counsel specified no basis on which the answer to the question would be inadmissible. This court has consistently held that an objection to the introduction of evidence, which does not specify the particular ground on which the evidence is objectionable, does not call the trial court's attention to the matter to be decided and, on appeal, will be treated as if no objection to such evidence had been made. Alvarado Min. & Mill Co. v. Warnock, 25 N.M. 694, 187 P. 542; State v. Clarkson, 42 N.M. 289, 76 P.2d 1161; Mares v. New Mexico Public Service Co., 42 N.M. 473, 82 P.2d 257. Therefore, the testimony of Mr. Terrill which was admitted in evidence will be treated on appeal as if no objection had been made to its introduction.

The testimony was also consistent with the stipulation of facts that:

"* * * there was no discussion between any of the parties who were lessors and the lessee, or by or between or among the parties who were lessors as to whether or not it was intended by the execution of the single lease prepared by Forrest Oil Corporation to pool or provide for the apportionment of the royalty which might accrue under the lease. * * *"

Mr. Terrill's testimony was that, in addition to the fact that there had been no discussion between the parties as to any intention to pool, he himself had no intention to do so and had "no thought of it."

■ Appellants' second point asserts that the trial court erred in finding that the manner in which the leased premises were described in the lease, and the identification of the interest owned by the respective lessors, evidenced an intention of the parties not to pool their royalty interests.

The description in the lease in question consists of separate descriptions of each lessor's land interest, and there is an absence of any single overall description of such property in the lease.

The courts of other jurisdictions seem to have considered the manner in which the separate tracts are described in the lease as an important factor evidencing the intent of the parties. In the leading and most cited Louisiana cases the courts hold that, where the tracts of land are described as one tract in the lease, a pooling agreement results. Shell Petroleum Corporation v. Calcasieu Real Estate & Oil Co., 185 La. 751, 170 So. 785; Nabors v. Producers' Oil Co., 140 La. 985, 74 So. 527, L.R.A.

1917D, 1115. See also, Magnolia Petroleum Co. v. Ouart, 200 Okl. 258, 192 P.2d 698; Peerless Oil & Gas Co. v. Tipken, 190 Okl. 396, 124 P.2d 418; Wettengel v. Gormley, 160 Pa. 559, 28 A. 934; Duffy v. Callaway (Tex.Civ.App.1958), 309 S.W.2d 853; French v. George (Tex.Civ.App.1942), 159 S.W.2d 566; Parker v. Parker (Tex.Civ. App.1940), 144 S.W.2d 303; Lynch v. Davis, 79 W.Va. 437, 92 S.E. 427, L.R.A.1917F, 566; South Penn Oil Co. v. Snodgrass, 71 W.Va. 438, 76 S.E. 961, 43 L.R.A.,N.S., 848. Substantially all of the cases so holding in the above jurisdictions involve leases with contiguous tracts of land described as a single tract of land. We have found no case in which the court found an intention to pool royalties when the individually owned tracts were described separately in the lease.

In the light of these decisions and, under the circumstances in the instant case, the trial court properly found that the manner in which the leased premises were described in the lease provided evidence of an intention by the respective lessors not to pool their royalty interests.

Appellants place considerable emphasis on the wording in the lease wherein Terrill is referred to as "lessor" in connection with tract No. 1, Iverson and wife as "lessors" in connection with the same tract, and Penrose and wife are referred to as "lessors" in connection with tract No. 2, and argue that this fact "has no legal significance from which the Court can interpret the intention of the parties," and that the court erred in finding No. 3. The court found that:

"* * * the identification therein of the several interests owned by the individual lessors evidenced an intent on the part of the parties to keep separate the interests of the parties and not to pool royalties. * * *"

Appellants also contend that the fact that Terrill was named as "lessor" was merely "an error on the part of the landman who drafted the lease." It is appellants' contention that all of the parties, to-wit: Terrill, Iverson and wife, and Penrose and wife, were referred to as "lessor" throughout the lease and that when "lessor" or "lessors" was used in the description, it meant all of the parties collectively and, as such, it could not be meant to indicate that the parties were leasing separately, as the trial court found in finding No. 3. In support of this contention appellants set forth sections 1, 2, 6 and 9 of the lease which contain either the words "lessor" or "said land." Appellants feel that these words are sufficient to show that the land is being leased as one parcel and the lessors are leasing not separately but as one lessor, and that this indicates that the lease is a community lease.

Appellants rely on Shell Petroleum Corporation v. Calcasieu Real Estate & Oil Co., supra, which contains language that

might be considered as supporting appellants' contention. However, regardless of the fact that the parties were referred to as "lessor," as stated by the court in that case, the contract contained this important stipulation:

"* * * 'That, regardless of any such change or division, said land shall be developed and operated, and all royalties accruing hereunder shall be treated, as an entirety; such royalties shall at all times be divided among and paid to the owners thereof in proportions according to the acreage and/or interest owned by each,' etc. * * *"

Appellants' third point is that the trial court erred in giving effect to the trial court's finding that there was nothing in the circumstances surrounding the execution of the lease which indicates or establishes an intention on the part of the lessors to pool their royalty interests.

Appellants' discussion on this point is directed to the construction of the lease contract on the basis of provisions contained in it, rather than to the circumstances surrounding the lease. In Brazell v. Brown, 169 Okl. 623, 38 P.2d 17, the court stated:

"* * * The lease merely defines the duties and rights of the second party as against the first party. It does not in any respect define the rights of the three persons constituting the first party as between themselves. The lessee was not concerned with how the lessors were to divide the royalty, and as between the lessors and the lessee it was not necessary to insert such a provision in the lease. * * *"

When this is appreciated, the emphasis which some courts have placed upon the use of the word "lessor" in the lease, or on the lesser interest clause which appears in all leases, and on other provisions in the lease, becomes of little significance in determining the intention of the lessors as between themselves.

The question before us was discussed in United Gas Public Service Co. v. Eaton (La. Court of Appeals 1934), 153 So. 702, and quoted in the trial court's memorandum of authorities in the principal case. On the question of the intention of the parties to pool, the court said:

"* * * The question has been before many of the courts of other oil producing states of the Union. There are two distinct lines of jurisprudence on the subject. The majority rule is that such a lease is severable as between the lessors and each lessor only shares in production from his own land. The majority rule does not support the contention that from the fact of owners of different tracts, or owners of different interests in parcels of the same tract, joining in the same lease, a presumption arises that they intend thereby to pool their various properties or

interests and tacitly agree to have the land operated as an entirety and to share in production from one or all of the tracts covered by the lease, on the basis of a proportionate ownership. To the contrary, if any presumption arises at all it certainly would be in favor of the negative of such a proposition. Intention to pool interests in this matter may only be determined from the express contract of the parties or from facts and circumstances which certainly establish such intention on their part. It should never be inferred simply from the fact that different owners joined in the same lease contract. * * * For us to say that they did intend to pool their interests would be writing into the contract a very material provision which the parties themselves did not think well enough of to incorporate therein; * * *."

The rule in Texas is that where several owners of contiguous or adjoining tracts join in a single lease covering their respective tracts, in the absence of an agreement to the contrary, the lease has the effect of communizing the various interests, resulting in the pooling or apportionment of the royalties among the lessors in the proportion that the acreage of each separate owner bears to the total number of acres in the lease. French v. George, supra; Parker v. Parker, supra.

The Oklahoma rule, on the division of royalties, depends on the intention of the lessors which may be determined from the language of the lease or by separate agreement between the lessors, or such conduct of the parties after the execution of the lease as would indicate a construction of the lease by the lessors. But when individual owners of contiguous tracts join in a single lease, then there is a presumption that a pooling of royalties is intended, unless a contrary intention or agreement is shown. Peerless Oil & Gas Co. v. Tipken, supra; Magnolia Petroleum Co. v. Ouart, supra.

The Louisiana courts hold that, from the fact that the parties join in the same lease contract, from that fact alone there arises no presumption of an intention to pool royalties. The question as to intent rests on the proof admitted at the trial. Louisiana Canal Co. v. Heyd, 189 La. 903, 181 So. 439, 116 A.L.R. 1260.

Appellants contend under their fourth point that the trial court erred in finding that the several conveyances made by the lessors, subsequent to the execution of the lease covering their respective mineral interests, evidenced their construction of the lease as not having effected a pooling of their royalty interests.

In this case all of the lessors made subsequent conveyances of their mineral interests in their respective tracts, such con-

veyances describing only that portion of the property separately owned by the grantor upon the execution of the lease. There is nothing in any of the conveyances indicating any claim to royalty under the other tracts in the lease.

Appellants' argument rests solely on the lease in question being construed as a community lease. However, the trial court, textwriters, and the impressive decisions of other states, favor a construction of this lease as a joint lease, because there is an absence of an express agreement contrary and the actions of the parties, upon the execution of the lease, show no intention to create a community lease.

In Summers Oil and Gas, Vol. 3A, § 612, p. 473, the author states:

"In the community oil and gas lease the owners of small contiguous tracts of land, usually town lots, join in a lease of their lands which provides for the development and operation of the lands demised as a unit, and a division of the royalties among the lessors on the basis of area or acreage. Such a lease differs from the usual joint lease by separate owners of land in that the lease of the latter type may not expressly provide for the sharing of royalties upon the basis of acreage and may not expressly provide for the development of the land as a unit. Where the joint lease contains the express provision that royalties are to be pooled or shared on the basis of acreage, and the nondivisibility of the lease from the standpoint of development and operation by the lessee is express or implied, such lease is in effect a community lease. * * *"

Since the lease in question has no express provision to pool royalties and does not provide for the development and operation of the lands as a unit, and no intention to so provide appearing, the lease is not a community lease.

The Louisiana court of appeals has met the problem of subsequent conveyances squarely in United Gas Public Service Co. v. Eaton, supra, wherein the court held:

"* * * In the case at bar, had the lessors intended to pool their mineral interests by signing a joint lease to Perkins, it seems to us that Eaton and Emmons thereafter, when disposing of fractional portions of their royalty rights, would not have confined their transfers to the respective 40 [acres] owned by them, but would have described the entire 80-acre tract. For us to say that they did intend to pool their interests would be writing into the contract a very material provision which the parties themselves did not think well enough of to incorporate therein; and, certainly, when Eaton's transferees bought and paid for por-

tions of his royalty rights they never dreamed that those interested in the other 40 had any semblance of right to participate with them in the benefits they hoped to enjoy from their investments."

In Shell Petroleum Corporation v. Calcasieu Real Estate & Oil Co., supra, the supreme court of Louisiana criticizes the Eaton decision but they do not overrule the case because the fact situation was completely different. See Summers Oil and Gas, Vol. 3A, § 611, pp. 460–461, where the author states that the courts all seem to agree that the question of the division of rents and royalties here involved is a matter of intention, and that the conduct of the parties, after the execution of the lease, indicates their construction of the lease. See also, 2 N.M.Digest, 1965 Supp., Contracts, Key No. 170(1), for specific cases.

Appellants argue that the character of the lease, i. e., whether or not it was a community lease, became fixed and must be determined as of the time of its execution, and that such character cannot be thereafter changed because of subsequent separate conveyances by the parties. An oil and gas lease is merely a contract between the parties and is to be tested by the same rules as any other contract. However, it is generally said that the purpose of interpretation of a contract is to ascertain the "intention of the parties." Foulke v. Miller, 381 Pa. 587, 112 A.2d 124; Howland v. Stitzer, 240 N.C. 689, 84 S.E.2d 167; United States v. Springfield Fire & Marine Ins. Co., (8 CCA 1953), 207 F.2d 935. It is, therefore, sometimes necessary, in order to give meaning to the words employed in ambiguous contracts as a basis for the determination of the rights of the parties, that extrinsic evidence be heard to make the court aware of the meaning the parties intended by the language used. See also, Mr. Justice Holmes' article "The Theory of Legal Interpretation," 12 Harv.L.Rev. 417. The fact that the parties subsequently acted in a particular manner in making conveyances of portions of the mineral interests indicates their understanding of the words. The fact that such actions may be self-serving, however, only goes to the weight to be given to such evidence. We think such evidence of surrounding circumstances, even though in the form of subsequent action by some of the parties, was admissible on the question of the meaning given to the words employed by one of the parties, and of the other party's "reason to know" the understanding the other party had. See 3 Corbin on Contracts, §§ 536, 537.

Appellants cite Schrader v. Gypsy Oil Co., 38 N.M. 124, 28 P.2d 885, which is distinguishable because the lease involved there contained an entirety clause, whereas the lease in the instant case does not.

See also, Raley v. Moore, 60 N.M. 200, 289 P.2d 957.

Appellants' fifth point contends that the trial court erred in failing to consider two factors as evidencing an intention of the lessors to pool their royalty interests: (1) That the separately owned tracts were contiguous; and (2) that the SW/4SE/4, Sec. 14, was in divided ownership and the entire tract would be required to constitute a well spacing or proration unit under the regulations of the Oil Conservation Commission.

Appellees contend that the points are not properly raised in this court because appellants did not submit to the trial court a proposed finding of fact that such two factors evidenced an intention of the lessors to pool their royalty interests.

Rule 52(B) (a) (6), Rules of Civil Procedure, provides:

"A party will waive specific findings of fact and conclusions of law if he fails to make a general request therefor in writing, or if he fails to tender specific findings and conclusions."

Appellees' contention is inapplicable since the trial court adopted, as finding of fact No. 1, the stipulation of facts submitted by the parties, which includes the fact that the tracts were separately owned and contiguous to each other, and that the SW/4 SE/4, Sec. 14, was in divided ownership.

Appellants, in their brief, state:

" * * * we do not believe that it is necessary or that any of the cases cited by appellees reflect an intention on the part of this Court to require an appellant to request specific findings on every provision of the document which is being construed or the uncontroverted facts surrounding the execution of the instrument which would have any bearing on the intention of the parties. * * *"

The application of Rule 52, supra, to this case, as suggested by appellees, would lead to endless confusion in many cases. However, the trial court did consider the above two facts and stated:

"It is contended that because a particular 40 acres in the lease is owned 20 each by one set of royalty holders and 20 each by another, a pooling should be decreed. I think this could be satisfied by a force pooling by the Conservation Commission or by agreement of the parties. I do not think it was accomplished by the lease in question, considering its terms and the circumstances surrounding its execution."

Therefore, the trial court did consider the two factors relied upon by appellants, but decided that, in the light of the preponderance of evidence to the contrary, such factors were sufficiently outweighed by evidence showing a lack of any intention to pool by any of the parties.

We, therefore, hold that the question of the division of rents or royalties is a matter of intention of the parties, which is to be ascertained and determined from the express language in the lease. Such language may be affected by the subsequent interpretation of the parties, as evidenced by their actions which indicate a construction of the lease with no presumption arising to aid either party. This is somewhat like the Louisiana rule quoted above, and is compatible with our rule in relation to the construction of contracts, i. e., that the court's duty is confined to interpretation of the contract which the parties made for themselves, and the court may not alter or make a new agreement for the parties. Davies v. Boyd, 73 N.M. 85, 385 P.2d 950.

Where a written contract is uncertain or ambiguous, the intent of the parties may be ascertained by their language and conduct, the objects sought to be accomplished, and surrounding circumstances at the time of execution of the contract. Jones v. International Union of Operating Engineers, 72 N.M. 322, 383 P.2d 571; Ashley v. Fearn, 64 N.M. 51, 323 P.2d 1093.

When the theory of non-apportionment of royalties is applied here, the lessor-owner of the non-producing tract is forced to continue the lease without receiving royalties or delay rentals. The lessee has complied with the lease by drilling a well and the lease is thereby perpetuated as to all of the owners as long thereafter as oil or gas is being produced from the land.

In Libby v. De Baca, 51 N.M. 95, 179 P.2d 263, this court stated:

" * * * 'The object of the lessor in making the lease was to secure the development of the leased premises for oil and gas. There is an implied covenant on the part of the lessee (in the absence of any expressed on the subject as in this lease) that after production of oil and gas in paying quantities is obtained, he will thereafter continue the work of development for production of oil and gas with reasonable diligence as to the undeveloped portion of the leased land.'

"But the duty of lessee does not end there. He must proceed with reasonable diligence, as viewed from the standpoint of a reasonably prudent operator, having in mind his own interest as well as that of the lessor, to market the product. * * *"

Under the theory of the Libby case, lessors could probably require lessee to continue the development as to the undeveloped portion of the leased land.

The trial court's finding, that there was insufficient evidence to show that the parties intended to pool the royalties, is

clearly supported by substantial evidence and will not be disturbed by this court.

The judgment is affirmed. It is so ordered.

CARMODY, C. J., and NOBLE, MOISE and COMPTON, JJ., concur.