673 P.2d 1306

**MANUEL LUJAN INSURANCE, INC., Plaintiff-Appellee,**

**v.**

**Larry R. JORDAN, d/b/a Jordan Insurance, Inc., Defendant-Appellant.**

No. 14657.

Supreme Court of New Mexico.

Dec. 5, 1983.

Sutin, Thayer & Browne, Raymond W. Schowers, Marianne Woodard, Albuquerque, for defendant-appellant.

Padilla, Riley & Vigil, Ray A. Padilla, Albuquerque, for plaintiff-appellee.

## OPINION

SOSA, Senior Justice.

Plaintiff Manuel Lujan Insurance Inc. (Lujan) sought an injunction and damages against its former employee Larry Jordan (Jordan) for engaging in post-employment competition for Lujan's customers asserting this action violated certain provisions of the employment contract between the parties. A temporary restraining order was issued prohibiting Jordan from contacting or in any way engaging in post-employment competition for customers of plaintiff Lujan. Jordan counterclaimed for salary owed and for damages resulting from the asserted wrongful issuance of the restraining order. Hearings on the injunction and restraining order were consolidated with a trial on the merits.

Defendant Jordan appeals from the judgment of the Bernalillo County District Court that enjoined him from competing for customers of Lujan for a two year period; failed to award him damages allegedly resulting from the issuance of the restraining order; and awarded Lujan the commissions generated by Jordan on a small number of the accounts in question.

We consider whether the district court erred in the following respects: 1) in enjoining Jordan from engaging in business in any way with certain customers of plaintiff; 2) in dismissing Jordan's counterclaim for damages arising out of issuance of the order restraining such competition; and 3) in requiring Jordan to pay Lujan monies received from business with Lujan's customers. We affirm the judgment of the district court.

On or about December 1, 1980 defendant Jordan began work as the salaried manager of plaintiff Lujan's bond department. Defendant was hired with the expectation that his expertise in the bond area would enhance plaintiff's reputation as a bonding agent and build up a substantial clientele in the bonding department. A written contract of employment was not immediately executed by the parties. This was due in part to the fact that Jordan was involved in litigation concerning a covenant not to compete contained in his employment contract with his previous employer. After that litigation was resolved, defendant and plaintiff agreed to and executed an employment

contract drafted by Lujan. The contract had an effective date of December 1, 1980. Jordan resigned his position on June 7, 1982. He subsequently engaged in bonding transactions with certain businesses who had been customers of Lujan during the period of Jordan's employment. After numerous proceedings Lujan eventually obtained an injunction prohibiting such activity.

Jordan maintains error in the district court injunction by asserting the employment contract in question prohibited only solicitation of Lujan's bond customers, not acceptance of their business. Lujan counters that the contract precluded even acceptance of unsolicited business for a period of two years from the date Jordan resigned.

■■■ The central objective in construing a contract is to ascertain and give effect to the intentions of the parties. *Leonard v. Barnes,* 75 N.M. 331, 404 P.2d 292 (1965). It is axiomatic that in construing the provisions of a written contract the instrument as a whole is to be considered, *Hines Corp. v. City of Albuquerque,* 95 N.M. 311, 621 P.2d 1116 (1980), and each part of the contract is to be accorded significance according to its place in the contract. *Schultz & Lindsay Constr. Co. v. State,* 83 N.M. 534, 494 P.2d 612 (1972).

The employment contract, among other things, provided that Jordan was to work exclusively for Lujan in securing and servicing insurance and bonding contracts. He was to receive a monthly salary but no commissions. Jordan was required to notify all businesses with which he dealt that he represented Lujan and no other business entity. All records and similar materials concerning the business transactions in which Jordan was to be involved were to remain in the undisputed control and possession of Lujan. Finally, in the event Jordan was to leave Lujan's employ, Jordan was not to solicit or compete for Lujan's customers for a fixed period of time.

The parties differ in their interpretations of the contract, particularly in their interpretation of the non-solicitation and non-competition provisions. These provisions were included in paragraph nine (9) of the employment contract which stated:

In event the Employee shall leave the employment of the Company, or if his employment is terminated by the Company for any reason or cause whatsoever, he shall not for a period of two (2) years from the date of termination of employment solicit the customers (policyholders) of the Company, either directly or indirectly. The purpose of this paragraph is to insure that the Employee for the periods set out herein, will not in any manner directly or indirectly enter into competition with the Company on [sic] the customers of the Company as of date of termination.

Jordan maintains that the covenant precluded solicitation but not acceptance of business from Lujan's customers.

The primary cases cited by Jordan in attempting to distinguish between post-employment solicitation and post-employment acceptance of business are not in point. While it is true that the court in *Rubel & Jensen Corp. v. Rubel,* 85 N.J.Super. 27, 203 A.2d 625 (1964) allowed acceptance of unsolicited business in the face of a covenant not to solicit, the covenant there differed materially from the one before us. That covenant concerned only direct or indirect solicitation. There was no additional language precluding competition in any form as is contained in the instant contract. *Rubel & Jensen* is thus distinguishable on its facts.

*Aetna Building Maintenance Co. v. West,* 39 Cal.2d 198, 246 P.2d 11 (1952) is also distinguishable. This case considered whether a former employee could use or disclose trade secrets acquired during employment and solicit company business. The distinction between solicitation and acceptance was applied in a context substantially different from that before this Court. The major focus of *Aetna* was whether the alleged possession and use of trade secrets

by the former employee would merit injunctive relief. The case turned primarily on equitable principles not, as here, on the construction of a restrictive covenant concerning solicitation and competition.

Reviewing the solicitation and competition provisions found at paragraph nine (9) in light of the other contractual provisions, it becomes apparent that there is some doubt as to the intention of the parties. For example, it is not clear whether the word "solicit" should be narrowly interpreted as precluding only solicitation but allowing Jordan to accept the unsolicited business of Lujan's customers. On the other hand, inclusion of the non-competition provision in the second sentence may be viewed as including prohibitions against any acceptance of, or competition for, the customers of Lujan. In addition, it is not entirely clear which interpretation is consistent with other contractual provisions detailing Lujan's undisputed control of all records concerning the bonding transactions of Jordan and the requirement that Jordan specifically communicate that he was dealing with Lujan's customers exclusively as Lujan's representative.

We are not unmindful of the general rule that any uncertainties in a contract must be construed most strongly against the party who drafted it. Restatement (Second) of Contracts § 206 (1981); *Shultz & Lindsay Constr. Co. v. State.* However, the terms of the employment contract as a whole, and certainly of the quoted paragraph, were ambiguous and uncertain. The parties' intentions were therefore properly gleaned from the conduct and language of the parties, the objectives sought to be accomplished, and the surrounding circumstances of the case. *Shaeffer v. Kelton,* 95 N.M. 182, 619 P.2d 1226 (1980); *Sierra Blanca Sales Co. v. Newco Industries Inc.,* 84 N.M. 524, 505 P.2d 867 (Ct.App.1972), *cert. denied,* 84 N.M. 512, 505 P.2d 855 (1972). As was stated in *Shultz & Lindsay,*

> [T]he construction of a contract adopted by the parties, as evidenced by their con-

duct and practices, is entitled to great weight, if not the controlling weight, in ascertaining their intention and their understanding of the contract. This is particularly true as to the resolution of ambiguities and uncertainties of meaning in the contract and especially so if the conduct of the parties manifesting their construction of the contract occurred prior to the development of a controversy between them.

*Id.* at 83 N.M. 535–536, 494 P.2d 613–614 (citations omitted). The trial court was therefore justified in admitting and considering parole evidence concerning the parties' intentions in this case. *Spinoso v. Rio Rancho Estates, Inc.,* 96 N.M. 5, 626 P.2d 1307 (Ct.App.1981), *cert. denied,* 96 N.M. 17, 627 P.2d 412 (1981).

The evidence indicated that Jordan was primarily hired for the purpose of building up Lujan's bond department. The evidence further indicated that after Lujan drafted the employment contract, Jordan had it in his possession for over a week while he reviewed it carefully. Prior to signing the contract the parties held discussions concerning its terms during which the insurance company president indicated that the customer accounts in question belonged exclusively to Lujan and that employees should not compete for the customers of the company. Moreover, prior to signing, Jordan requested and was specifically denied the addition of a clause that would have allowed him the right to do business with Lujan's customers after he left Lujan's employment. Similarly, after he resigned, Jordan twice requested and was denied the right to purchase the business of Lujan's customers.

Reviewing the contract as a whole in light of these facts and circumstances it becomes apparent that the parties intended that Jordan be restricted from competing by not soliciting or accepting business from Lujan's customers. The parties thus contemplated a comprehensive ban on acceptance, not merely a narrow promise not to

solicit. We conclude that the district court was correct in its judgment that Jordan be permanently enjoined from engaging in any business whatsoever with Lujan's clients for a period of two years beginning June 7, 1982, the day Jordan resigned.

Defendant Jordan also challenges the dismissal of his counterclaims for damages allegedly incurred as a result of the trial court's order restraining him from conducting business with Lujan's customers. Jordan's position is that the restraining order precluded him from obtaining commissions on certain bond transactions that were eventually processed by Lujan.

■ This claim essentially attacks the soundness of the court's judgment regarding the scope of the solicitation and competition provisions. Since the court properly concluded that Jordan could not accept any business from Lujan's customers, it directly follows that the commissions generated from business with those customers belong exclusively to Lujan. The counterclaims were properly denied.

Certain of Lujan's customers indicated their intentions to deal with Jordan alone in obtaining bonds after his departure from Lujan. The court allowed Jordan to continue work already commenced but required that the commissions be paid to Lujan. Defendant asserts error in the district court's order requiring him to pay Lujan these commissions.

Since we have concluded that for a two year period Jordan was not to compete for or accept any of Lujan's business, and was not entitled to the commissions generated therefrom, there was a sound basis for the district court order. Mandating payment of the commissions to Lujan was consistent with the terms of the contract, the parole evidence in this case and other aspects of the district court judgment. The district court order was proper.

The judgment is affirmed.

IT IS SO ORDERED.

FEDERICI and RIORDAN, JJ., concur.

PAYNE, C.J., and STOWERS, J., respectfully dissent.